**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3844**

WRITER'S EMAIL ADDRESS
kathleensullivan@quinnemanuel.com

October 29, 2020

<u>VIA ECF</u>

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Hewitt v. Pratt Institute*, No. 20-cv-02007(MKB-SJB)

Dear Judge Brodie:

We write on behalf of Pratt Institute pursuant to the Court's Individual Practices and Rules 3.A, to respectfully request a pre-motion conference concerning Pratt's anticipated motion to dismiss the putative class action complaint filed by plaintiffs Juna Hewitt and Kristen Thomas. The Complaint alleges claims for breach of contract, unjust enrichment, conversion, and money had and received as a result of remote learning and other safety measures Pratt has taken in response to the global COVID-19 pandemic. As Pratt will demonstrate in its motion, several independent bases justify dismissal of the Complaint.

*First*, all the claims should be dismissed because they allege diminished quality of education, and thus are impermissible attempts to assert a theory of educational malpractice, which "New York law does not recognize" as a matter of public policy. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). The New York Court of Appeals has explicitly rejected any such a cause of action, stating that "[t]o entertain a cause of action for 'educational malpractice' would require the courts not merely to make judgments as to the validity of broad educational policies — a course we have unalteringly eschewed in the past — but, more importantly, to sit in review of the day-to-day implementation of these policies." *Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 444-45 (1979); *see also Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (N.Y. App. Term 1996) (citing *Donohue* in reversing judgment against a university for failing to provide a computer programming class as supposedly described in a catalog); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 04-cv-704 (RPP), 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) ("[c]ourts retain a 'restricted role' in dealing with and reviewing controversies involving

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

colleges and universities."). Courts applying New York law have consistently applied that reasoning to dismiss claims, no matter the legal theory plaintiffs assert. *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 209 (S.D.N.Y. 1998) (dismissing contract and tort claims); *In re Michel*, 573 B.R. 46, 65-66 (Bankr. E.D.N.Y. 2017) (dismissing contract and unjust enrichment claims).

*Second*, plaintiffs' claims should be dismissed because New York's common-law educational-malpractice cases reflect core constitutional principles that protect "[a]cademic freedom," which has "long has been viewed as a special concern of the First Amendment," *Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 312 (1978); *cf. New York Times v. Sullivan*, 376 U.S. 254, 265 (1964) (holding that First Amendment constrains the common law of defamation). Universities enjoy a strong degree of "educational autonomy," *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003), and the "four essential freedoms of a university" include its right "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study," *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring in result); *Burt v. Gates*, 502 F.3d 183, 191 (2d Cir. 2007) (citing *Sweezy*); *Boise v. N.Y. Univ.*, No. 03 Civ. 5862 (RWS), 2005 WL 2899853, at *7 (S.D.N.Y. 2005) ("the University is afforded a degree of deference for its exercise of academic judgment") (citing *Sweezy*). For that reason, "[c]ourts have refused to substitute their judgment for that of university officials or to review the day-to-day administration of academic policies." *Sirohi v. Lee*, 222 A.D.2d 222, 222 (1995) (rejecting claims "alleging, in essence, that the Columbia trustees and individual defendants had failed to provide the quality of educational environment promised"). It would intrude upon Pratt's academic freedom to second-guess its decision to educate its students during a pandemic by use of a virtual format with the same courses, professors, classmates and uninterrupted progress toward a degree.

*Third*, the contract claims warrant dismissal because plaintiffs fail to identify any express or implied contractual terms that require Pratt to provide exclusively in-person education in the course of advancing a student toward an expected degree. *See Anthes v. New York Univ.*, No. 17-cv-2511 (ALC), 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018) (applying New York law) ("However, even if plaintiff expected such assistance, plaintiff does not allege that there was ever an agreement, express or implied, to do so."), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57 (2d Cir. 2019); *Ward v. New York Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *4-5 (S.D.N.Y. Sept. 28, 2000) (applying New York law) (dismissing contract breach claim where students failed to identify "specifically designated and discrete promises"). Even if the sparse website statements on which plaintiffs allegedly relied had promised in-person instruction (which they do not), the statements are far too vague to form a contractual obligation to provide exclusively a certain form of classroom instruction no matter what context or circumstances might arise. And the First Department has specifically rejected the core of plaintiffs' contractual claims in recognizing that, while "in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Paynter v. New York Univ.*, 319 N.Y.S. 893, 893 (1st Dep't 1971).

*Fourth*, the unjust enrichment claim warrants dismissal because it is duplicative of plaintiffs' contract claim. *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018)

(applying New York law) (dismissing as duplicative unjust enrichment claim "based on the same factual allegations underlying its contract and tort claims"); *Yalincak v. New York Univ.*, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law) (dismissing unjust enrichment claims as duplicative of implied student-university contract). Moreover, plaintiffs fail to allege facts needed to state an unjust enrichment claim on the merits. Because students timely completed their scheduled coursework and were awarded all expected credits, plaintiffs fail to allege any fundamental unfairness that would require a refund of tuition, nor do they allege Pratt saved money or profited as a result of transitioning to remote learning. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 n.6 (2d Cir. 1997) (holding that unjust enrichment claim failed under New York law because the appellants failed to adequately allege that the appellees received anything that "unjustly enriches them").

*Fifth*, the conversion claim warrants dismissal because it is duplicative of the contract claim, and is therefore barred by the economic loss rule. *See Carmania Corp., N.V. v. Hambrecht Terrell Intern.*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (under New York law, "If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort."). Additionally, the conversion claim fails to allege a "specific fund" fund of money in which Plaintiffs have a possessory interest." *Independence Discount Corp. v. Bressner,* 365 N.Y.S.2d 44 (1975); *re Musicland Holding Corp.*, 386 B.R. 428, 440 (S.D.N.Y. 2008) ("It is well-settled New York law that an action for the conversion of monies is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession."). And to the extent plaintiffs allege Pratt converted non-monetary "benefits for which the tuition and fees paid," Compl. ¶ 57, their conversion claim fails because a "claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property." *Matzan v. Eastman Kodak Co.*, 521 N.Y.S.2d 917, 918 (1987).

*Sixth*, for similar reasons, plaintiffs fail to state a claim for money had and received, *see Belda v. Doerfler*, 2015 WL 5737320, at *4 n.4 (S.D.N.Y. Sept. 30, 2015) (collecting cases and explaining this claim is "essentially identical to a claim for unjust enrichment"), and because "it cannot be said here that [Pratt] came to possess [tuition or fees] by means of oppression, imposition, extortion, deceit or trespass," *Panix Promotions, Ltd. v. Lewis*, 01-cv-2709 (HB), 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (applying New York law).

For these reasons, Pratt respectfully submits that plaintiffs' action should be dismissed in its entirety, and respectfully requests a pre-motion conference and permission to file a motion to dismiss the Complaint.

Respectfully submitted,

Kathleen M. Sullivan
KMS

3